**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C.R. ADAMS TRUCKING, INC., and Michael Cates, Respondents.**

No. 82–2379.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1983.

Decided Oct. 12, 1983.

Thomas G. Bearden, McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., for respondents.

Allison W. Brown, Jr., Karen I. Ward, Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order of March 4, 1982, finding that C.R. Adams Trucking, Inc., and M.E. Cates violated Sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3).[1] Adams Trucking and Cates argue that the Board erred in concluding that they were "joint employers" and that the discharge of two employees was unlawful.

I.

C.R. Adams Trucking, Inc., owns seven dump trucks that it uses in hauling sand and rock products under contract with other

1. The NLRB ordered respondents, *inter alia,* to offer reinstatement to the employees who were discharged, to make those employees whole for losses suffered, and to expunge from their records any reference to the discharge.

companies, primarily Westlake Quarries. In the spring of 1979, Michael Cates bought one dump truck and contracted with Adams Trucking for services necessary to operate the truck. Under the contract, Adams Trucking provided Cates with customers, primarily Westlake Quarries, and handled "weight slips" in exchange for a 5% commission. Cates employed drivers to run his truck, since he was employed full-time elsewhere.

Adams Trucking had a collective-bargaining agreement with a trucking union, while Cates did not. Nevertheless, Cates's drivers, as a practical matter, had to join the union within thirty-one days of starting work, since without a union card drivers could not gain access to union work sites. After starting work as a driver for Cates in early August 1979, Robert Becker had not yet joined the union. Neither had several drivers working for Adams Trucking. At a meeting called by Curt Adams, President of Adams Trucking, Inc., in late August, Adams told these men that they must go down to the union hall and join the union. He also allegedly told the men that they must sign up as independent truck owners rather than as employees, because he could not afford to pay health and welfare benefits required for employees.

Subsequently, on September 10, 1979, Bruce Pine, one of the non-union employees of Adams, and Robert Becker were discharged, for the stated reason that they failed to join the union. Bruce Pine then filed a charge with the NLRB alleging that he and Robert Becker were discharged in violation of the NLRA, Sections 8(a)(1) and (3). The Board issued a complaint, and a hearing took place in February 1980. In March 1982, an Administrative Law Judge released his decision finding that Adams Trucking, Inc. and Cates were joint employers and had violated the Act in discharging Becker and Pine. The Board adopted this decision, and following the respondents' failure to comply, petitioned this Court for an order enforcing it.

## II.

Respondents argue that the Board erred in ruling that Adams Trucking, Inc., and Cates were "joint employers." (The issue is important because Cates's volume of business, considered alone, is not large enough to bring him within the Board's own jurisdictional standards.) They argue that this Court's decision in *Pulitzer Publishing Co. v. NLRB*, 618 F.2d 1275 (8th Cir.1980), compels the opposite conclusion. We disagree.

In *Pulitzer* we reversed a Board finding that a newspaper publisher and a delivery company were joint employers. In making this decision, we applied a four-factor test that considers whether the total relationship between two businesses reveals:

(1) some functional interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Pulitzer*, 618 F.2d at 1278–79. The publishing company and delivery company in *Pulitzer* did not share any common management or ownership. And the functional interrelation of operations was not substantial. While the delivery drivers picked up the papers at the publisher's loading docks, they received their routes from assistant managers employed by the delivery company and were to report to the managers if they experienced any trouble. Finally, the delivery company hired, supervised, fired, and disciplined its own employees, and the publisher had only a slight input into its labor relations.

Here the finding of the Board that Adams had control over the employment conditions of Cates's driver, Becker, clearly distinguishes this case from *Pulitzer*. There is substantial evidence in the record to support this finding. Becker started work for Cates upon the direction of Adams, when one of Cates's drivers quit in early August. Becker testified that the only time he saw Cates was when he went to Cates's home to pick up his pay check, and the only time he talked to him on the telephone was the day of his discharge. Cates accepted Adams's decision to employ Becker without further investigating Beck-

er's qualifications. Adams also occasionally reprimanded the driver of Cates's truck for not hauling proper loads, absenteeism, tardiness, and for other infractions of Adams's rules. Cates's truck had the name of Adams's company painted on it. Further, the fact that Cates worked full-time elsewhere supports the inference that Adams exercised daily supervision over Cates's drivers. Finally, Pine testified that Adams fired Pine and Becker, and Becker testified that when he telephoned Cates about the firing, Cates told him that there was nothing he could do about it.[2]

### III.

▆ Respondents do not marshal evidence from the record in an attempt to show that the Board erred in finding that Adams instructed Becker and Cates to join the union as independent owners, but rather argue that it was permissible to fire them simply for failing to join the union. While in some cases an employee's failure to join a union is a valid reason for dismissal, cf. Larkins v. NLRB, 596 F.2d 240 (7th Cir.1979), this clearly is not so where the failure to join results from the illegal conduct of an employer who instructs his employees to lie so that they are deprived of health and welfare benefits.

Respondents assert that the failure to join did not result from the illegal instructions, but the record offers substantial evidence to support the opposite conclusion. Pine's and Becker's hesitation in joining the union arose from the fact that they did not want to lie and join as independent owners and lose health and welfare benefits. Their conduct shows they were willing to join on a proper basis. They gave Adams a check to pay the membership fee, which Adams later returned, allegedly because he thought the union officials might recognize him as a truck-company owner and therefore question the independent-owner claims. They also went to join the union on the morning

of the firing and were to return later in the day to see the business agent so that they could arrange deferred payment of their dues. Just prior to the firing Pine asked Adams if he and Becker should go down then to the union to see the business agent, to which Adams replied he had heard they attempted to join as employees and was going to "nip it in the bud."

Enforcement granted.

---

2. While Adams and Cates testified otherwise, the opinion of the ALJ offers convincing reasons for finding that the testimony of Becker and Pine has greater credibility than that of Adams and Cates. *C.R. Adams Trucking, Inc.,* No. 14–CA–12997, slip op. at 7–11 (March 4, 1982).